IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>vs.<br><br>CORDELL MALEEC MAYFIELD,<br>　　　　　Defendant. | Case No. 24-cr-94-CJW<br><br>**REPORT AND RECOMMENDATION<br>RE: PRO SE MOTION TO DISMISS** |

_____

## I.　INTRODUCTION

Before me is Defendant's pro se "Request for Prosecution to Send *Brady* Materials Affidavit for Search Warrant 30 day Dismissal Due to *Brady* Violations," filed on May 5, 2025. (Doc. 94.) The Government field a timely Resistance on May 7, 2025. (Doc. 99.) On May 13, 2025, Defendant filed a timely pro se Reply. (Doc. 101.)

While the instant motion pertains to discovery, the relief requested includes dismissal of the action as a sanction. Because of the potential dispositive nature of the motion, I issue the following report and recommendation.

## II.　PROCEDURAL HISTORY

Defendant was first charged by a criminal complaint on October 23, 2024 with possession of a firearm as a felon pursuant to 18 U.S.C. Section 922(g)(1). (Doc. 2). Defendant made his initial appearance on the complaint November 1, 2024, represented by the Federal Public Defender's Officer and was detained. (Doc. 6). On November 5, 2024, an indictment was returned against Defendant for the same offense as well as a charge of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. Section 922(k). (Doc. 14.)

1

By the time of Defendant's arraignment on November 15, 2024, Attorney Andrea Jaeger filed an appearance for Defendant and the Federal Public Defender's Office had withdrawn.  (Doc. 20, 22.)  The standard stipulated discovery order was entered on November 15, 2024.  (Doc. 24.)

Defendant moved to withdraw and proceed pro se and without standby counsel on January 21, 2025.  (Doc. 33.)  I held a hearing on January 27, 2025, and granted Defendant's motion to proceed pro se but required Ms. Jaeger to continue as standby counsel.  Part of my reason for having Ms. Jaeger remain as standby counsel was to facilitate discovery.

On January 30, 2025, the Government moved for entry of a protective order. (Doc. 37.)  When the Court received no resistance from Defendant, I entered the protective order proposed by the Government.  (Doc. 43.)  However, on March 17, 2025, the Clerk of Court received and filed Defendant's Response to Plaintiff's Motion for a Protective Order that had been mailed on February 3, 2025.  (Doc. 66.)  I treated this Response as a motion to reconsider entry of the protective order, but ultimately left the protective order in place.  (Doc. 73.)

On April 16, 2025, I held an in-person status conference, principally to discuss the length of trial and trial date.  At the hearing, Defendant was present with Attorney Jaeger, and he orally renewed his motion to have standby counsel removed.  I offered to appoint alternate standby counsel, but Defendant was adamant in his desire to not have standby counsel.  Thus, I granted Defendant's motion to discharge Ms. Jaeger, and I did not appoint other standby counsel.  (Doc. 82.)

On April 24, 2025, Defendant filed a pro se "Request to Remove Protective Order." (Doc. 85.) On May 1, 2025, the Government filed a timely resistance.[1] (Doc. 90.) On May 7, 2025, I set a hearing on Defendant's Request to Remove Protective Order and the instant Motion to Dismiss. (Doc. 100). The hearing on Defendant's motions was held on May 15, 2025. (Doc. 111.) Following the hearing, I granted in part Defendant's Request to Remove Protective Order and denied the remainder as moot. Regarding the Motion to Dismiss, at the hearing, Defendant indicated that he believed he was entitled to a *Franks* hearing and argued that a warrant he received after the deadline to submit pretrial motions had passed should be suppressed. Accordingly, I set deadlines for Defendant and the Government to file briefs on the *Franks* issue. (Doc. 113.) Defendant timely filed his brief on May 28, 2025. (Doc. 121.) The Government timely filed a resistance brief on May 29, 2025. (Doc. 123-1.)

## III. DISCUSSION

### A. The Parties' Positions

In the Motion to Dismiss, Defendant argues that he "has requested his full discovery on numerous occasions and the prosecution fails to [provide it] and has been keeping materials from [him]." (Doc. 94 at 1.) Defendant asserts that at the April 16, 2025 status conference, "the prosecution stated . . . that [he] is not entitled to witness statements that will be used at trial and are refusing to provide this discovery material to [him]." (*Id.*) Defendant contends that "this is a serious violation of due process[.]" (*Id.* at 2.) Relying on *Brady v. Maryland*, 373 U.S. 83 (1963), Defendant argues that "if [he] cannot receive his full discovery material that the Government intends on using at trial this is a violation of Due Process and equal right to fair trial." (*Id.*) Defendant requests

---

[1] On May 5, 2025, the Government moved to amend its resistance brief, which was filed on May 1, 2025. (Doc. 95.) I granted the Government's motion (Doc. 96) and the Government's amended brief was filed at Doc. 98.

3

"a dismissal of this case due to the violations of Due Process" if the Government does not provide "the discovery that will be used at trial within the next 30 days[.]" (*Id.*)

In his request for a *Franks* hearing, Defendant asserts that he is entitled to a *Franks* hearing to cross-examine Sgt. Paulsen regarding "omitted . . . material facts from his affidavit" attached to his application for a state search warrant to search two of Defendant's cell phones seized on September 2024 during the execution of a separate search warrant for Defendant's business. (Doc. 121 at 2.) Specially, Defendant contends that, contrary to Sgt. Paulsen's affidavit, Defendant claims that he never told Sgt. Paulsen that he would not give Sgt. Paulsen the passwords to the cell phones. (*Id.*) Defendant argues that, under *Franks*, he has "proven the reckless omissions of the alleged statement made regarding failure to give Sgt. Paulsen a password to the phones" and this entitles him "to a new evaluation of probable cause with the gaps in the affidavit appropriately filled with the omitted facts." (*Id.* at 2-3) (quotation omitted).

The Government argues that Defendant's due process rights have not been infringed as "[c]ompliance with the Federal Rules of Criminal Procedure, federal disclosure statutes and the prosecutor's independent duty to disclose exculpatory or impeaching information meets the standard of due process." (Doc. 99-1 at 4.) The Government maintains that "Defendant has not established that the discovery process in this case resulted [in] any constitutional violation under Brady, Giglio or the due process clause." (*Id.* at 8.)

The Government also argues that Defendant's request for a *Franks* hearing and attempt to file a new motion to suppress evidence is untimely and Defendant "has not shown good cause to excuse his filing including new grounds not previously raised in a timely manner." (Doc. 123-1 at 1) (citing Fed. R. Crim. P. 12(c)(3)). Further, the Government asserts that a Franks hearing is unwarranted because the statements in Sgt.

4

Paulsen's affidavit were true and even if the alleged false statement was excised, probable cause still existed. (*Id.* at 6.)

**B.      Analysis**

  *1.      The Discovery File*

Defendant's motion alleges that he "has requested his full discovery on numerous occasions." (Doc. 94 at 1.) This statement seems to underscore Defendant's misunderstanding of the discovery process. The Government has a discovery file. A defendant may be entitled to access some items that are in the Government's discovery file, but the file belongs to the Government. The Stipulated Discovery Order is an agreement entered into between the Government and a defendant regarding disclosure of discovery materials. (Doc. 24.) Pursuant to the Stipulated Discovery Order ("SDO") the parties agree to conduct discovery somewhat differently than they would in the absence of such an agreement. Presumably, both defense counsel and prosecutors see a benefit to conducting discovery under the SDO, or they would never use it. Among other things, defense counsel may have access to more materials than the Government is required to disclose under the Federal Rules of Criminal Procedure and applicable case law. But the SDO repeatedly and expressly refers to the duties and obligations of "Defendant's counsel" and not just "Defendant." For example,

> Discovery material may be shown to and discussed with Defendant but must remain at all times in the sole custody of Defendant's attorney or any person retained by or working on behalf of Defendant's counsel. Under no circumstances may any discovery material be left with or given to Defendant or any other person.

(Doc. 24 at 3.) The SDO continues, "If the attorney for Defendant is subsequently allowed to withdraw from this case, defense counsel shall promptly return all discovery materials to the Government." (*Id.* at 4.) The SDO requires the participation of defense counsel to execute the agreement. In simple terms, the SDO shows the Government is

5

willing to agree to provide access to more of its discovery file to defense counsel than a pro se defendant. In the absence of the agreement, the parties are bound by the Rules of Criminal Procedure (principally Rule 16) and applicable case law. Discovery proceeds somewhat differently where there is no SDO in place and a defendant may be entitled to different items.

In electing to proceed pro se without standby counsel, the SDO was withdrawn and superseded by the Protective Order entered on February 10, 2025, which now governs disclosure of discovery materials. (Doc. 43.) Thus, Defendant must show he is entitled to something under the Rules of Criminal Procedure and applicable case law. Defendant has not established that he is entitled to anything merely because there was, at one time, a SDO in place.

### 2. *Jencks Act Materials*

The Protective Order provides in pertinent part that discovery materials will be provided to Defendant under "Federal Rule of Criminal Procedure 16, the Jencks Act, 18 U.S.C. § 3500, and the constitutional disclosure requirements of *Brady*, *Giglio* and their progeny[.]" (*Id.* at 1.)

The Jencks Act, 18 U.S.C. § 3500 provides that:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall

6

> order it to be delivered directly to the defendant for his examination and use. . . .
>
> (e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—
>
>> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>>
>> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>>
>> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id.*; *see also United States v. Adams*, 938 F.2d 96, 98 (8th Cir. 1991) ("The Jencks Act provides that after a witness for the government has testified on direct examination, a defendant may move for the production of any statement of that witness in the possession of the government that relates to the subject matter as to which the witness testified. 18 U.S.C. § 3500."). Furthermore, "[t]he Jencks Act does not compel the government to produce a statement or report of a government witness until after the witness has testified on direct examination, after which the defendant may move for the production of any statements in the government's possession made by that witness relating to the subject matter of his testimony." *United States v. Green*, 151 F.3d 1111, 1115 (8th Cir. 1998). However, "'[a]lthough in many cases the government freely discloses Jencks Act material to the defense in advance of trial, . . . the government may not be required to do so.'" *Id.* (quoting *United States v. Wilson*, 102 F.3d 968, 971-72 (8th Cir. 1996), in turn quoting *United States v. White*, 750 F.2d 726, 729 (8th Cir. 1984)).

Here, under the Protective Order, the Government is not required to provide Jencks Act material prior to trial. *See White*, 750 F.2d at 729. Instead, the Government

7

must comply with 18 U.S.C. § 3500, which only requires that witness statements be provided after the witness has testified and Defendant moves for the production of any statements in the possession of the Government. *See Green*, 151 F.3d at 1115; *Adams*, 938 F.2d at 98. Accordingly, to the extent that Defendant is moving for dismissal based on the Government's failure to provide him with witness statements, I recommend that the motion be denied.

### 3. Alleged **Brady** *Violation*

Under *Brady*, "'[t]he government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment, and this duty extends to impeachment evidence.'" *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009) (quoting *United States v. Barraza Cazares*, 465 F.3d 327, 333 (8th Cir. 2006)). "To show a *Brady* violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." *United States v. Jeanpierre*, 636 F.3d 416, 422 (8th Cir. 2011) (quotation omitted). However, *United States v. Gonzales* outlines several limitations to *Brady*:

> First, *Brady* does not require the government to disclose inculpatory evidence. *See United States v. Roach*, 28 F.3d 729, 734 (8th Cir.1994) (requested information must be exculpatory); *United States v. Carper*, 942 F.2d 1298, 1300 n. 1 (8th Cir.), *cert. denied*, 502 U.S. 993, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991). Second, in this Circuit, the rule of *Brady* is limited only to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. *See United States v. Manthei*, 979 F.2d 124, 127 (8th Cir.1992) (quoting *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir.1986)). Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, *Brady* is not violated. *See United States v. Boykin*, 986 F.2d 270, 276 n. 6 (8th Cir.) (quoting *Nassar*, 792 F.2d at 121), *cert. denied*, 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). Finally, the government need not disclose evidence available to the defense from other sources or evidence already possessed by the defendants. *See United States v. Jones*, 34 F.3d 596, 600

8

(8th Cir.1994), *cert. denied*, 514 U.S. 1067, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995).

90 F.3d 1363, 1368 (8th Cir. 1996).

Here, Defendant cannot show any of the elements required to prove a *Brady* violation. First, because Defendant merely raises a generic complaint that the Government has not provided all the discovery he is entitled to receive. Thus, Defendant cannot show that the Government is withholding evidence that is favorable to him. As for the Jencks Act material discussed above, the Government is not required to disclose such material at this juncture of the prosecution, and therefore, there can be no *Brady* violation as to the Jencks Act materials. *See Jeanpierre*, 636 F.3d at 422 ("*Brady* does not require pretrial disclosure . . . if the information is furnished before it is too late for the defendant to use it at trial") (quoting *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005)). Second, for the same reasons outlined above, Defendant cannot show that the Government has failed to provide him discovery that is material to guilt or that the Government has suppressed evidence. Moreover, under *Brady* "due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *Almendares*, 397 F.3d at 664 (citing *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986)); *see also United States v. Holmes*, 421 F.3d 683, 687 (8th Cir. 2005) ("The government's disclosure pattern in a given case does not offend *Brady*, however, so long as the evidence in question is disclosed prior to the end of trial."). Accordingly, because Defendant cannot show a *Brady* violation or a due process violation, I recommend that the motion be denied.

### 4. *Request for* **Franks** *Hearing*
#### a. Timeliness

Fed. R. Crim. P. 12(c)(3) provides that, "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider

9

the defense, objection, or request if the party shows good cause." "To show good cause, a party must show both cause and prejudice." *United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2019). Further, the fact that Defendant is proceeding pro se does not excuse noncompliance with Rule 12. *United States v. Green*, 691 F.3d 960, 965 (8th Cir. 2012). "The right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law,' *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and [a defendant's] pro se status alone does not constitute good cause." *Green*, 691 F.3d at 965-66.

Here, Defendant has not addressed either good cause or prejudice. On February 11, 2025, the Government provided Defendant initial discovery which included documents related to the state search warrants. (Doc. 99-2 at 1.) Thus, prior to filing his motion to suppress, Defendant was aware of the state search warrant related to the two cell phones. However, it appears that Defendant was not provided with the affidavit attached to the state search warrant for the two cell phones until April 18, 2025. *See* Doc. 123-1 at 4. Thus, it also appears that Defendant received the affidavit to the state search warrant after the deadline for filing a motion to suppress and after he filed his motion to suppress. While this may suggest some cause for the Court to consider the issue out of time, I note that Defendant waited nearly six weeks after he received the documents to raise the issue. Assuming without finding good cause, Defendant still has not shown prejudice. In fact, Defendant has not explained what he believes should be suppressed or how suppressing the two cell phones affects his case. As discussed in the Report and Recommendation, the search warrant for the building was not defective and it was the execution of that search warrant where officers found and seized the firearm at issue in this case. Because Defendant has failed to show prejudice, I recommend that the motion as it relates to Defendant's *Franks* request be denied as untimely.

10

### b. Merits

Under *Franks*, an affidavit in support of a search warrant is presumed valid. 438 U.S. at 171; *see also United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022); *United States v. Hollis*, 245 F.3d 671, 673 (8th Cir. 2001). A defendant is entitled to a hearing under *Franks* when he or she "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56; *see also United States v. Hansen*, 27 F.4th 634, 637 (8th Cir. 2022) ("To receive a *Franks* hearing, 'a defendant must make a substantial preliminary showing that there was an intentional or reckless' omission from a warrant affidavit that 'was necessary to the finding of probable cause.'") (Quoting *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008))). "This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *Hansen*, 27 F.4th at 637 (quoting *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015)). Indeed, "[a] mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. Short*, 2 F.4th 1076, 1080 (8th Cir. 2021) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

To make a showing of reckless disregard for the truth, the defendant must show that the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information" he reported. *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)). "Recklessness can be inferred from [an] omission 'when the material omitted would have been clearly critical to the finding of probable cause.'" *Id*. (quoting *Conant*, 799 F.3d at 1200). If the defendant fails to make "a 'strong initial

11

showing' of deliberate falsehood or reckless disregard for the truth," a *Franks* hearing "must be denied." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quoting *United States v. Pennington*, 287 F.3d 739, 743 (8th Cir. 2002)).

The pertinent material that Defendant complains about in the state search warrant application affidavit is as follows:

> A search warrant for the above-mentioned phones was authored on 09/24/2024 and signed by Judge Keast. The warrant was not able to be executed due to [Defendant] refusing to provide the passcodes to the phones. Your Affiant has now obtained the passcodes and is able to execute the search of the phones above approval of a new search warrant.

(Doc. 126-1 at 10.)

Here, Defendant is unable to make the difficult preliminary showing. Defendant merely states that "Mr. Mayfield never told Sgt. Paulsen that he wouldn't give him the passwords to the cell phone. . . . Mayfield has proven the reckless omissions of the alleged statement made regarding failure to give Sgt. Paulsen a password to the phones 'entitles Mr. Mayfield to a new evaluation of probable cause' with the gaps in the affidavit appropriately filled with the omitted facts." (Doc. 121 at 2-3.) "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Short*, 2 F.4th at 1080 (quoting *Mathison*, 157 F.3d at 548). Defendant has not filed a sworn affidavit or any other form of corroboration necessary to make the preliminary showing. Furthermore, Government's Exhibits 2 and 3 support Sgt. Paulsen's statement in the affidavit that Defendant refused to provide him the passcodes to the telephones. Defendant offers no proof of a "false statement knowingly and intentionally, or with reckless disregard for the truth." *Conant*, 799 F.3d at 1199. Accordingly, I find that Defendant is not entitled to a *Franks* hearing and recommend that the motion denied.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's pro se Motion to Dismiss. **(Doc. 94.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. See Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. United States v. Wise, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 11th day of June, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa